My name is Michael Maxwell, and it is my pleasure to represent the plaintiff, Robert Daniel, on this matter. I trust that you have carefully reviewed the records, so I'm just going to skim over the top, and I'm going to take a moment to tell you where I really think that we are conceding some ground, and we're also asking the court to focus its attention. The Gifford-Pinchot National Forest is accessed by old roads. The Forest Service does not know who built some of these roads, nor does it know who designed some of them. The Forest Service has neglected the maintenance and repair of many of these roads, and some of them have safety hazards on them in the form of eroded or missing shoulders. The Forest Service does not have the money in its budget to maintain and repair these hundreds or thousands of miles of roads. So to fund the maintenance and repair of the roads, the Forest Service offers its timber for sale to logging companies, and as part of a timber sales contract, the Forest Service will identify hazards on the roads and will designate dangerous sections of the road as, quote, unsuitable or unsuitable for haul, and then it requires the logging company to maintain and repair the roads prior to harvesting and hauling the timber. The Forest Service published an offer to sell timber called the Willie Thin Offer. In this offer, it identified a portion of Road 47 that needed repair. That portion of the road included Milepost 14.4 as unsuitable for haul, meaning hazardous. However, nobody was willing to bid on that offer, presumably because the timber company thought they couldn't make any money off of it. Now, the Forest Service has many ways of making a timber sale more financially attractive. It can adjust the price of the timber, and it can also cut back on the scope of the required road work, which it did here, and it created a new offer called the Willie Thin Reoffer, in which it changed the scope of the road work. Witness Michael Malgarini testified that the Forest Service knew that that stretch of road that included Milepost 14.4 was hazardous, but it removed that portion of the road work from the Willie Thin Reoffer in order to make it more financially attractive. Mr. Malgarini was the successful bidder on the Willie Thin Reoffer, and after securing the bid, Mr. Malgarini met with a representative of the Forest Service to go over the bid. He showed them a portion of Road 47 at Milepost 12.2 where the shoulder was missing, and he asked for a contract modification so that the Forest Service would authorize him and pay him to repair that portion of the road, and the Forest Service agreed to the contract modification. Mr. Malgarini then went to Milepost 14.4 and told the Forest Service representative that this stretch of road was even more dangerous than the other one, and the record's in dispute, but there's some evidence that he asked for a contract modification, and the Forest Service representative told him there's no money in the budget to pay for that, and he said something like, I can't believe that you're going to have us log on this road with the testimony alone raise a genuine issue of material fact. Yes. And as to the design, we don't know who designed the road, is that right? That's a key part. I mean, to me, when you sort of start with the basics, because usually the government agency would be involved, and there'd be specs, and we don't have that, so it seems that if we don't know who designed the road, it would seem hard to connect that up then with a discretionary function, right? Precisely. You say precisely, but in this case, as I understand it, the government assumed for purposes of your argument that they did design the road and said it was still a discretionary decision to build it, and I assume what we're talking about now is the pre-elevation, the nine percent elevation. The government assumed that they, for purposes of the argument, that they are the people who designed and constructed it, but that it wasn't a requirement, that there was no policy requiring that it be built at that elevation. Close. The government asked the court to assume, without preventing any evidence, that it had designed the road. What's the difference? The point is that they are not contesting the step one of the discretionary function exception analysis. No, the court is actually saying they're presumed to have made a discretionary design, a discretionary function decision in the design of the road. Because they presume the government made the design, right? Because they presume the government made the design, but the government can't show that it even designed the road, or it made the road. It could have been a rogue road, it could have been cut by somebody else before the government accessed it. Don't you need to have a better idea of what the government did before you can even get to step two, or when you get to step two to evaluate the second part of that? Yes. So we need to know. Yes. Why? I need to understand why you think they need to know. For example, we have a two-part test for, let's just say, in a completely different context. In 1983 cases, there's a two-part analysis, whether it's a constitutional violation, whether it's clearly established. We often decide, without reaching the first element, or assuming that the first element has been met, that the second element has not been met. The same would be true here. If we assumed that the government designed and constructed the road, and we give you the first step of the analysis, why can't we just resolve this on the second step? You certainly can. There is no political, social, or economic policy decision in deciding the slope of the road. Did you also have a... Go ahead. We do do this in 1983 in constitutional cases, and you say there's no policy decision. That kind of begs the question, if you don't even know who designed the road. You just have a road out there in the forest, right? Yes, but try to make this all much simpler. We can live with the first order on summary judgment, or the first order dismissing part of our case on negligent design and construction. Did the district court address negligent construction? The district court found it all to be under the design criteria. Why is that? Isn't there a difference between construction and design? You could have a perfectly designed road, but it could be negligently built. That's what we think happened. We think that this was a good design, and the person who had the blade on the bulldozer, when they bulldozed the road, they just tipped the blade a little too sharply and built the road in violation of design. But the district court didn't really treat the two as separate, kind of collapsed construction and design together. Did the district court find any problem with that? We have a huge problem with that. We think that was an error by the court. Your claim, as I read it, is a design and construction claim, correct? We filed suit citing the four different causes of action under Keller v. City of Spokane, which are the four things that a government can do with the road over the course of the road's life. Design it, construct it, maintain it, and repair it. And we cited all four of them. We kind of view the design and or construction component as having to do with the excessive slope. We view the negligent repair and maintenance as the voluminous materials. I would direct you to do that. Review the second motion. But we've already spent our time reviewing the voluminous materials. Why was the district court wrong in the second summary judgment ruling? Okay, wrong in three areas. First of all, they said there's no private party analog. And the private party analog is very clear. Any private landowner in the state of Washington which opens its roads to natural resource extraction has a duty to make the road safe, has an ordinary care to make the roads reasonably safe for the business invitees. Except here the government claims that they knew all about this particular defect in the road. That's the second area. There's no duty to protect an invitee against an open and obvious condition unless one of the restatement of torts 343 or 343A exceptions applies. And one of those is that the private landowner should anticipate that the person will encounter the risk because they have to. And they should anticipate that the loggers out there would have to drive on this road as part of their job duties. We think that there's a genuine issue of material fact about that and we should have been allowed to argue that with a factual testimony before the court rather than the court finding that there was no genuine issue of material fact. Would you go back and that's the material issue of fact on this landowner invitee and delegation, right? Yes. A second part of that has to do with the safe haul classification. And the district court, as I understand it, dismissed that theory. Would you address that? Yes. Under Rainier v. United States 1957 Supreme Court decision, it's simply the private party analog is simply whether or not a state actor under similar circumstances would be liable. And our claim is that the state actor would be a private landowner who opens the road and says you can go and extract the natural resources. Under state law, the private landowner has a duty to exercise ordinary care to make the road safe before opening it. How do you square that with West Bay Steel, which says that there is no private party analog in a case where the government opened and allowed for the approval of sureties? I'm with you on the private party analog with respect to the maintenance because of this testimony from the owner of the company that talks about his expectation that the shoulder would be repaired, that obviously people and Mr. Daniel in particular were going to be on the land, but I'm not quite understanding what the private party analog is with respect to the safe haul determination. This is the way I look at it. You can always refine the need for a private party analog in the federal court because the federal government does so many things that are taking the private party analog too far. It's more of a simple analysis than the court necessarily made it. We argue that the district court made the argument more complicated than it needed to be. I don't think we've still gotten to the bottom of the safe haul issue. What's your best authority then for saying this is a private party analog and the court should be reversed on that? Ray and EA versus the United States. Would you like to reserve the balance of your time for rebuttal? Yes I would. Thank you. Thank you. Good morning. May it please the court, Tanya Culbertson on behalf of the defendant. The whole back half of the court's discussion just now with my friend on the other side is doubly forfeited. So Daniel's arguments as to the district court's second order are doubly forfeited and the district court was right not to give him a second bite at the apple, let alone this court now giving him a third on both the duty to repair and on the safe haul determination. All of the arguments that Mr. Daniel is making now are not arguments that were raised in his opposition to the second motion to dismiss. So to send this back now, indeed on appeal Daniel does not explain how the district court abused its discretion in applying local rule 7H and refusing to reach those arguments raised for the first time on reconsideration. And then on appeal now Mr. Daniel does not explain how that was an abuse of discretion for the district court. So that is the second level of forfeiture that I was discussing. So for this court to send this case back now regarding the second order it would have to conclude that the district court abused its discretion in how it applied rule 7H and would also have to excuse Daniel's failure in his appellate briefing to even address how that was an abuse of the district court's discretion. So on the bottom line, which of the claims that he is suggesting reversal on do you think that this would cover? This would cover the duty to repair at 14.4. This would also cover the lack of the private party analog. So I'm hearing my friend on the other side just suggest that he is now conceding on the design construction discretionary function. I didn't quite understand him to say he was conceding completely. OK. Or he could live with that ruling. He said he could live. But I'm not sure. Well, finish with your answer to Judge McEwen. We'll go back to that. Sure. We can go back to that. My answer is as to the duty to repair at 14.4 and the private party analog determination. Those are both waived. For purposes of your argument today that we disagree with you on the forfeiture issue, can you address those claims on the merits? Absolutely. So several things about the representation of what was said about the condition of the road at mile marker 14.4. First of all, it's very clear that the Forest Service duty is the duty to an invitee. Right. So they do not have a duty to repair open and obvious hazards. There is no question from the record that the condition of the road at 14.4 was known and obvious. Mr. Daniel talked about it. Mr. Malgarini talked about it. Elevation. No. The super elevation, the fact that the road was sloped and around a curve that was known. And I don't think that there is a legal requirement for Mr. Daniel to understand exactly that the super elevation is 9 percent. He did say that road is steep. I know how to encounter it. Kamala, the space needle case is a good example where the court says you don't have to, he doesn't have to sort of understand the full operation of the elevators to understand that the elevator shaft is dangerous. It's the same sort of analogy here. He doesn't have to know the 9 percent. On the maintenance and repair aspect of mile post 14.4 and Daniel's argument that the private party analog is the duty of a private land owner to an invitee, you would agree that that satisfies the private party analog? No. I would not agree that that satisfies the private party analog. The private party analog that the district court said was not satisfied was the determination that the road is safe for haul under federal standards. I don't want to talk about that just yet. I want to talk about this other part with respect to the open and obvious danger and the repair of the road. Tell me why that's not a sufficient private party analog. I don't think the issue there necessarily is whether that is a sufficient private party analog. The issue there is whether the Forest Service actually had the duty to repair this open and obvious hazard. On that point, we are at the duty. You're at the duty. We're not talking about the private party analog and we're talking about the duty. All that Daniel needs to do is raise an issue of fact to be able to get past summary judgment. Do you agree? I do agree, but I don't agree that he has done so. Tell me why, based on the testimony of the company owner that, at least in my view, raises some question of fact with respect to the maintenance and repair of that road by the government. What the record shows is that Sarah Brockie's testimony in her deposition is that mile marker 12.2 was raised to us. We went out. We inspected it. We approved that contract change. That repair was made. There was no discussion of 14.4 before the accident. Then on the other side of that, you have Malgorini's testimony saying we all knew that was a problematic portion of the road. I thought it was equally dangerous. What he does not say is I asked the Forest Service to allow me to repair that before the accident. When he was asked specifically, did you ask to repair it before the accident? He says, I don't know. I don't remember. He made them aware of it, but everybody was already aware of it. It was open and obvious. That does not resolve the question of whether the Forest Service then had a duty to actually repair it. Does the Forest Service have a duty to approve any of the repairs? They, under the contract, had to approve road reconstruction. Any construction that was above and beyond regular maintenance and small repairs. He says, and you say everybody knows, this road, whether it's dangerous or not, it needs repair. It's got hazards. I'm not sure he says that needs repair. I want that repaired. He says, well, it's got a dangerous condition. Doesn't the Forest Service have an obligation? Not necessarily, Your Honor. The Forest Service and any landowner under Washington law does not have a duty to deliver a piece of land or road, and I'm talking about a private road, free of any hazard. It has to be free of latent hazards. Correct. Because the Forest Service did not have reason to know that Mr. Daniel would encounter this hazard in this way. It is safe for haul on a level two road for logging operations. They do not understand or have reason to believe that an employee is going to take an excavator over that portion of the road over ice, and that is the piece that they would have to understand in order to, you know, for this restatement. That's pretty granular. That's like saying, well, they really didn't know that it was going to snow up there, and then we would have ice, and then it would be dangerous. I mean, that's kind of a requirement that you can impute some common knowledge to this service that it could be used in a lot of conditions with a lot of different vehicles. Why did they need to know this granular specifically? Well, so let me answer this question in a different way. This gets us to the delegation piece, which the district court also examined and said, this contract clearly delegates responsibility for day-to-day operations and worker safety on this contract over the stretch of road to our CRO. So the Forest Service says, you know, we've considered everything. We've looked at this condition for road. It meets the federal requirements for safe haul. You know, we've delegated everything else to you, so our assumption is you will operate safely over that stretch of road, and so even, you know, granting you that perhaps, you know, they might have been able to imagine that there was a possibility for some sort of accident here. They had delegated that safety duty to our CRO. So it was the logging company's responsibility to just repair the shoulder at 14.2. Not to repair. Just do it. Not to repair. No, Your Honor, not to repair the shoulder at 14.4, and they could not. Then how do you say that there was a complete delegation of authority to the logging company? Complete delegation to how the operations are conducted and that they would be conducted safely. So it was our CRO's responsibility to make sure that the equipment that was being used on the road was the appropriate equipment, that the conditions, the choice to, you know, take an excavator over that road, over ice. I will also, getting back quickly to the restatement point that we talked about and, you know, whether they could anticipate that this might happen. Mr. Daniel's own testimony is that he did not have to be clearing out the snow on that particular road on that particular day. Mr. Malgorini told Daniel, get to it when you can. Logging operations were not even active over the portion of the road he was trying to clear. When he got his truck stuck and then he went back to base camp to see if he could use something to pull his truck out, he was asked in his deposition, did you have to go get the truck right now? And he said, no. Could you have waited for conditions to improve? Yes. So, you know, the record itself does not support that he had no choice but to, you know, operate in an unsafe manner in this way. And that delegation piece that I was discussing is delegation of the duty to make sure operations are conducted in a safe manner. Is it your argument that using the tractor, whatever it was called, was unsafe? The operation of that tractor was unsafe? I think that the Forest Service's duty was to certify the road as a level two road, safe for highway legal vehicles that are high clearance. The excavator is neither of those things. It is not highway legal. It is not a high clearance vehicle. That is not what the Forest Service was inspecting that road for. Certainly, I think common sense dictates that taking a metal tractor— Was the logging company then prohibited from using the excavator? It was— How did it even get it up to base camp? So there's testimony in the record. Sarah Rocky explains that excavators are placed onto low buoys and typically towed in. And that, yes, the Forest Service understands that excavators are used for some portion of work done under timber sale contracts, but that that is clearing of the brush on the side of the road, clearing of the ditches on and off the road. And so, again, all of this goes to the delegation of the safe operation. There are safe ways to use excavators on these roads. Unfortunately, what happened to Mr. Daniel was not a safe way to operate an excavator on the road with a known hazard area at 14.4. So when the district court dismissed this landowner invitee in the safe hall and your colleague says, well, wait a second, what about Rainier— I don't know how to pronounce it—Rainier versus the United States, how do you respond to that argument? I respond to that in the same way that Judge Desai did by raising West Bay Steel, that a determination that a road is safe for haul is sort of a term of art. It is something that is governed by federal requirements in the same way that certifying that the sureties that were offered in West Bay Steel meet the requirements of the Miller Act and that that is not the equivalent of a private landowner having to keep private roads over private property in a reasonably safe condition for travel. That is not a sufficiently similar comparison. Ms. Culbertson, can I ask you a little bit about the concession in district court about the government— apparently you assumed or asked the district court to assume that the government designed and constructed the road? What was that—what did you actually ask the district court to assume? So I do not read the filings in the district court to do that. The filings in the district court go through the two steps of the discretionary function analysis. And at the first step, what you look at is whether there is a statute or regulation or a policy that specifically prescribes a course of action. And so the Forest Service put in, you know, as evidence here are all the policies, you know, here is a deposition about how these policies would apply, and said, you know, we do not have original blueprints for when this road was constructed. We do not know if we originally constructed it. But that is not the inquiry at step one. The inquiry is, you know, assuming that we constructed it, this is what we would have applied. And I pointed this out in the brief, and I would just like to point it out again here briefly. If it is indeed true that the Forest Service did not originally construct the road, it cannot be liable for negligent construction. It might be— But that is a whole different issue. Well, it is the same—I mean, ultimately it is a liability issue. The best case scenario here is that the plaintiffs are able to establish that the government constructed the road and that it did so for a non-discretionary reason.   Okay. So if you are—I don't care if you use the word concession or not. If there is an assumption that the government constructed the road, that's halfway there for the plaintiff. Yes. But they still need to be able to show that it was a non-discretionary decision, and that is the prong under which the district court found that the exception applied. Absolutely right. I think that is absolutely right. And you don't look—you know, under the discretionary function exception, you're not looking at what was the actual decision that was made. You look at what was the guidance for the way in which this decision was supposed to be made. It's like this Rubik's Cube. We don't know who designed the road. We have this road hanging out there in the forest. So how can you apply Part 2, a policy sort of undisconnected from this road that we don't know how it appeared? I guess the way that I would sort of present it to the court is either let's assume we built it. If we built it, we applied these standards and, you know, we followed in the discretionary function exception. Do you know that these standards existed at the time that you built it? I do not know the state of the policy handbooks at that time. So your other option, however, is— Let me ask you one last question. Of course. I just want to make sure you—  And is the government's burden to establish the discretionary function? Function exception applies. It's like a defense or— Yes. Right. True, but ultimately it is the defendant's burden. If we were to move to the liability stage under Washington law, it is the defendant's burden to prove, you know, all the four elements of negligence. And so that is where ultimately under liability— The plaintiff's burden. You meant the plaintiff. I'm sorry. The plaintiff's burden. Yes. Thank you. And ultimately he would fail in being able to prove that the Forest Service built the road. So what's the other option that you were— That is the other option, right? So either we have discretionary function exception if you assume that the Forest Service did in fact build the road. And if the Forest Service did not build the road, then it cannot be liable for negligent design and construction. It may be liable for something else. It may be liable for, you know, not reconstructing the road once it saw the condition of the road. I think that's what you're on the other side of saying, which is on the negligent, you know, repair and maintenance. That is a separate issue that may continue to exist. Right. Which, you know, as we've briefed for all the other reasons, that separately fails. Which is why I understand you're on the other side to say it doesn't really matter whether we win on this claim or this claim. If we can win on the other, then that's perfectly fine with them.  Yeah, I guess my point is I don't want the court to get hung up on the design and construction claim simply because there's a lack of evidence about who built the road. Thank you very much. Thank you. Mr. Maxwell, we'll put two minutes on the clock for you. We did take your friend on the other side a little over her time. All right. On page 16 of our appellate brief, we cite Ray Enyé. The question of whether a party-private analog exists is simply a question of, quote, whether a private person would be responsible for similar negligence under the laws of the state where the acts occurred. That's Ray Enyé. That's been the law since 1957. We don't think that West Bay refines that or even contradicts that. And so we think that the private-party analog under the government has a duty under Minnickin v. Carr, a state court case, to exercise ordinary care to keep the land safe for its business invitees. Can't that be true? And maybe explain to me if I'm misunderstanding your claim. I really have parsed this, the second issue that came up in the summary judgment motion, sort of this argument with respect to the repair and maintenance and the safe haul to be two components of this argument. So even if we were to determine that there's no private-party analog with respect to the safe haul, we can still find that there is a genuine issue of fact with respect to what I hear, the conceded private-party analog on the repair and maintenance for the open and obvious danger. The whole safe haul thing, I think, simply means opening the road. Private landowner has the option of closing a road. So you don't need that. I guess my question is… What does it do for your case? Let's say it dropped out. Would it change the remedy? You continue to have a claim for the repair and maintenance and the private-party analog that exists. And I hear the government conceding exists with respect to that claim. Yes, okay. Do you agree? Yes. And so would it change it if the safe haul were affirmed? Would it change your remedy that you would be entitled to if you were able to proceed on the repair and maintenance? I haven't thought about that. But I think it's a good question. In the few moments that I have left, I want to talk about the other… You don't have an answer for me. I'm afraid I don't right now. I'm just not smart enough. I'm not as smart as the last two that are standing behind me. The third area where the court granted summary judgment was on the explicit delegation. Under Washington law, a delegation to the contractor must be explicit in the contract. The government has yet to produce a clause in the contract where there's an explicit delegation. And it must cede all authority over the project to the subcontractor. Here, the government withheld for itself the authority to approve or not approve repair of the road shoulders. Therefore, it did not. This is a genuine issue of material fact as to whether or not it ceded that control to RCRO Logging and Mr. Mogherini. Thank you, counsel. Okay. Thank you, both counsel, for your argument. This case is now submitted. All right, thank you. Next, we'll hear argument in three-pack, the city of Seattle.
judges: McKEOWN, PAEZ, DESAI